IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINA ANTHONY | ) | CASE NO. |
| 24101 Lakeshore Boulevard | ) | |
| Euclid, Ohio 44123 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| PNC BANK, N.A. | ) | |
| 1900 East 9th Street | ) | **JURY DEMAND ENDORSED** |
| Cleveland, Ohio 44114 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| PNC Bank, N.A. | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Regina Anthony, by and through undersigned counsel, as her Complaint against

the Defendant, states and avers the following:

## PARTIES

1. Anthony is a resident of the city of Euclid, county of Cuyahoga, state of Ohio.

2. PNC Bank, N.A. is a foreign corporation that operates substantial business within the state of

   Ohio.

3. PNC Bank was at all times hereinafter mentioned an employer within the meaning of R.C.

   § 4112.01 *et seq.*

4. PNC Bank was at all times hereinafter mentioned an employer within the meaning of 42

   U.S.C. 126 § 12101 *et seq.*

5. PNC Bank was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C § 2601 *et seq.*

## JURISDICTION & VENUE

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Anthony is alleging federal law claims under The Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.* and The Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

7. PNC Bank employed Anthony as a remote employee, who conducted all of her work and duties in the city of Cleveland, county of Cuyahoga, state of Ohio.

8. As a remote employee who worked and lived in Cuyahoga County, the adverse actions asserted herein occurred within Cuyahoga County.

9. All material events alleged in this Complaint occurred in county of Cuyahoga.

10. This Court has supplemental jurisdiction over Anthony's state law claims pursuant to 28 U.S.C. § 1367 as Anthony's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Anthony filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00481 against PNC Bank.

13. On or about November 23, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Anthony regarding the Charges of Discrimination brought by Anthony against PNC Bank in EEOC Agency Charge No. 532-2020-00481.

14. Anthony received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

15. Anthony has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

16. Anthony has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

17. Anthony is a former employee of PNC Bank.

18. PNC Bank hired Anthony in March 2018.

19. PNC Bank employed Anthony as a Loan Services Representative.

20. PNC Bank employed Anthony to work 100% remotely.

21. During all material events asserted herein, Anthony worked from her home in Cleveland, Ohio.

22. In early 2019, Anthony began suffering from depression and anxiety.

23. In early 2019, a medical professional diagnosed Anthony as suffering from anxiety and depression.

24. As a result of being diagnosed with and treating for anxiety and depression, Anthony has a record of a physical or mental impairment.

25. PNC Bank was not aware that Anthony suffers from anxiety and depression at the time that it hired her.

26. The symptoms of Anthony's depression and anxiety substantially impair one or major work functions, such as working.

27. As a result of suffering from anxiety and depression, Anthony is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

28. As a result of suffering from anxiety and depression, Anthony is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq.*

29. During Anthony's employment with PNC Bank, Anthony disclosed that she suffers from anxiety and depression.

30. PNC Bank perceived Anthony to be disabled.

31. In the alternative, PNC Bank perceived that Anthony's medical condition constituted a physical impairment.

32. Despite this actual or perceived disabling condition, Anthony was still able to perform the essential functions of her job with or without reasonable accommodation(s).

33. As a result of suffering from depression and anxiety, Anthony applied for Family and Medical Leave Act leave in February 2019.

34. When Anthony applied for FMLA leave in February 2019, she provided documentation from her medical provider substantiating her need for leave.

35. When Anthony applied for FMLA leave in February 2019, PNC Bank advised Anthony that she was not eligible for FMLA leave.

36. Although Anthony was not eligible for FMLA leave, Anthony applied for and received short-term disability benefits through PNC Bank and went on an approved leave of absence in February and March of 2019.

37. Anthony returned to work in March 2019.

38. Anthony applied to utilize continuous FMLA leave on August 26, 2019.

39. Anthony applied for FMLA leave in August 2019 as a result of her anxiety and depression.

40. PNC Bank is a covered employer under the FMLA.

41. When Anthony applied for FMLA leave in August 2019, Anthony submitted documentation from her medical provider.

42. As of August 26, 2019, Anthony worked for PNC Bank for at least 12 months.

43. As of August 26, 2019, Anthony had at least 1,250 hours of service for PNC Bank during the previous 12 months.

44. As of August 26, 2019, Anthony was eligible to utilize FMLA leave.

45. As of August 26, 2019, Anthony was entitled to utilize FMLA leave as a result of her own serious medical condition.

46. While Anthony was on FMLA leave, Anthony communicated with her supervisor, Candace Feliciano.

47. While Anthony was on FMLA leave, Anthony requested from Feliciano additional training upon her return from FMLA leave.

48. Anthony requested additional training for her position as she had been recently transferred to a different position prior to taking FMLA leave.

49. Anthony requested additional training for her position because the switch to a new position without additional training was exacerbating her anxiety and depression.

50. Feliciano advised Anthony that Feliciano would be out on maternity leave when Anthony returned to work.

51. Feliciano advised Anthony that as she would be out when Anthony returned to work, that Anthony would be reporting to Macey Jones and Michael Casteel.

52. Jones was aware that Anthony has depression and anxiety.

53. Jones was aware that Anthony was utilizing FMLA leave.

54. Casteel was aware that Anthony has depression and anxiety.

55. Casteel was aware that Anthony was utilizing FMLA leave.

56. Feliciano told Anthony that when Anthony returned from FMLA leave that Jones and Casteel would provide Anthony additional training for her new position.

57. Anthony utilized continuous FMLA leave from August 26, 2019 until returning to work on or about October 13, 2019.

58. When Anthony returned to work on or about October 13, 2019, Anthony performed work for PNC Bank.

59. When Anthony returned to work from her FMLA leave in October 2019, Jones did not provide Anthony additional training.

60. Jones did not provide Anthony additional training because of her disability.

61. Alternatively, Jones did not provide Anthony additional training because of a perceived disability.

62. Jones did not provide Anthony additional training because Anthony utilized FMLA leave.

63. When Anthony returned to work from her FMLA leave in October 2019, Casteel did not provide Anthony additional training.

64. Casteel did not provide Anthony additional training because of her disability.

65. Alternatively, Casteel did not provide Anthony additional training because of a perceived disability.

66. Casteel did not provide Anthony additional training because Anthony utilized FMLA leave.

67. When Anthony returned to work after October 13, 2019, Anthony communicated Jones.

68. Jones was aware that Anthony returned to work in October 2019 because Anthony and Jones exchanged work emails.

69. Jones was aware that Anthony returned from FMLA leave in October 2019.

70. As Anthony did not receive additional training upon her return from FMLA leave in October 2019, her anxiety and depression intensified.

71. Anthony complained to PNC Bank's human resource department on or about November 5, 2019 as she had not received the additional training.

72. Jones and Casteel did not provide Anthony additional training after Anthony's call to the human resource department on November 5, 2019.

73. Anthony call PNC Bank's human resource department and complained again on November 12, 2019 as Jones and Casteel still had not provided her additional training.

74. An individual from the human resource department called Anthony on November 14, 2019 (hereinafter, "November 14 Call").

75. During the November 14 Call, HR advised Anthony that Anthony could either arrange a call on her own time with Casteel, or that Anthony could take a 90-day unpaid leave of absence to look for a new position internally with PNC Bank.

76. During the November 14 Call, Anthony advised that she wanted to speak directly with Casteel.

77. As a result of the November 14 Call, Anthony drafted an email to Casteel requesting help with resolving the ongoing issues of not being provided additional training.

78. On November 15, 2019, Casteel and Jones jointly called Anthony (hereinafter, "November 15 Call").

79. The November 15 Call was approximately 30 minutes long.

80. Casteel spoke in a condescending tone for a majority of the November 15 Call.

81. Casteel spoke in a dismissive tone for a majority of the November 15 Call.

82. Casteel spoke in an intimidating tone for a majority of the November 15 Call.

83. Casteel said on the November 15 Call that he thought Anthony's email to him sounded awfully like a resignation.

84. Anthony told Casteel during the November 15 Call that she had no intention in resigning.

85. Anthony told Casteel during the November 15 Call that she simply requested additional training.

86. Anthony told Casteel during the November 15 Call that the lack of additional training was exacerbating her anxiety and depression.

87. Anthony complained to Casteel during the November 15 Call that he was not providing her additional training because of her anxiety and depression.

88. Anthony complained to Casteel during the November 15 Call that he was not providing her additional training because she had utilized FMLA leave.

89. During the November 15 Call, Casteel stated that Anthony had never actually retuned to work after she utilized FMLA leave in August 2019.

90. During the November 15 Call, Anthony told Casteel she had indeed returned to work in October 2019.

91. During the November 15 Call, Anthony told Casteel that Jones was aware that Anthony had been working since October 2019 as the two of them had been exchanging work emails.

92. During the November 15 Call, Casteel chastised Anthony for not making more calls over the past few months, even though Anthony was on FMLA leave during that timeframe.

93. During the November 15 Call, Anthony told Casteel that Casteel was being so unprofessional, that she would like to continue the call on a recorded line, or via Skype.

94. During the November 15 Call, Casteel refused to move the call to a recorded line.

95. During the November 15 Call, Casteel continued speaking with Casteel because she feared that Casteel would terminate her employment if she were to hang up.

96. Casteel acted with severe hostility on the November 15 Call with the intention of forcing Anthony to quit.

97. Casteel embarrassed Anthony on the November 15 Call.

98. A reasonable person would have found Casteel's actions during the November 15 Call to be so unusually adverse that a reasonable person would have felt compelled to resign.

99. Casteel intended to force Anthony to quit with his actions during the November 15 Call.

100. After the November 15 Call, Jones reached out to Anthony and acknowledged that Casteel was completely unprofessional during the call.

101. After the November 15 Call, Jones told Anthony that she could tell that Anthony felt unsafe during the call.

102. Anthony reported the November 15 Call to the human resource department on the following Monday, November 18, 2019 (hereinafter, "November 18 Complaint").

103. During the November 18 Complaint, Anthony reported that Casteel acted with hostility toward her due to her disability.

104. During the November 18 Complaint, Anthony reported that Casteel acted with hostility toward her due to her utilization of FMLA leave.

105. During the November 18 Complaint, Anthony reported that Casteel acted with hostility toward her in retaliation for her protected complaints raised against him.

106. During the November 18 Complaint, Anthony reported that Casteel's severe actions made her feel like she had to resign her employment.

107. Based on PNC Bank's policies, Anthony's complaints raised in her November 18 Call were considered to be significant workplace incidents.

108. Defendant has a policy and practice of fully investigating significant workplace incidents.

109. Defendant has a policy and practice of getting written statements from all participants to significant workplace incidents.

110. Defendant did not get a written statement from Anthony regarding Anthony's November 18 Complaint

111. Upon information and belief, Defendant did not get a written statement from Casteel regarding Anthony's November 18 Complaint.

112. Upon information and belief, Defendant did not get a written statement from Jones regarding Anthony's November 18 Complaint.

113. Defendant has a policy and practice of getting written statements from all witnesses to significant workplace incidents.

114. Upon information and belief, Defendant did not conduct an investigation regarding Anthony's November 18 Complaint.

115. Defendant violated its policy and practice of fully investigating significant workplace incidents regarding Anthony's Discrimination Complaints.

116. Defendant violated its policy and practice of getting written statements from all participants to significant workplace incidents regarding Anthony's Discrimination Complaints.

117. Defendant violated its policy and practice of getting written statements from all witnesses to significant workplace incidents regarding Anthony's Discrimination Complaints.

118. Defendant's failure to follow its policy and practice of fully investigating significant workplace incidents was an adverse action against Anthony.

119. Defendant's failure to follow its policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Anthony.

120. Defendant's failure to follow its policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Anthony.

121. Defendant failed to follow its policy and practice of investigating significant workplace incidents with the intention of forcing Anthony to resign.

122. Upon information and belief, Defendant did not take any corrective action against Casteel as a result of Anthony's November 18 Complaint.

123. As a result of not conducting an investigation regarding Anthony's November 18 Complaint, Defendant ratified the discrimination that Anthony suffered.

124. As a result of not issuing any corrective action regarding Anthony's November 18 Complaint, Defendant ratified the discrimination that Anthony suffered.

125. On November 21, 2019, Anthony realized she had not been paid by PNC Bank since the November 15 Call.

126. PNC Bank did not compensate Anthony for her hours worked because of her disability.

127. PNC Bank did not compensate Anthony for her hours worked because of a perceived disability.

128. PNC Bank did not compensate Anthony for her hours worked because she utilized FMLA leave.

129. PNC Bank did not compensate Anthony for her hours worked because she made protected complaints.

130. PNC Bank did not compensate Anthony with the intention of forcing her to resign.

131. A reasonable person would have found PNC Bank's failure to pay her for a month's worth of work to be so unusually adverse that a reasonable person would have felt compelled to resign.

132. Anthony called PNC Bank's human resource department every day since November 21, 2019 to inquire about why she had not been compensated for her hours worked.

133. On November 25, 2019, an individual from PNC Bank advised Anthony that her employment would be terminated due to recent absences.

134. On November 25, 2019, Anthony attempted to advise PNC Bank that she either had been working on the days PNC Bank said she was not working, or that the absences were covered by FMLA leave.

135. On November 25, 2019, an individual from PNC Bank advised Anthony that even if she had missed work due to medical reasons in November, that her employment would be terminated.

136. PNC Bank advised Anthony that her employment could be terminated due to her absences on November 25, 2019 with the intention of getting Anthony to quit.

137. A reasonable person would have found someone from PNC Bank calling Anthony to tell her that she could be fired for days off covered by FMLA leave to be so unusually adverse that a reasonable person would have felt compelled to resign.

138. As of November 25, 2019, PNC Bank still had not compensated Anthony for her hours worked since the November 15 Call.

139. PNC Bank continued to refrain for paying her for her hours worked with the intention of getting Anthony to quit.

140. A reasonable person would have found an employer continuing to refuse to pay her for hours worked to be so unusually adverse that a reasonable person would have felt compelled to resign.

141. PNC Bank constructively discharged Anthony on November 25, 2019.

142. A reasonable person would have found Anthony's working conditions to be so unusually adverse that a reasonable person would have felt compelled to resign.

143. Defendant intended to create working conditions that were so unusually adverse that it would force Anthony to quit.

144. Defendant's actions were so intolerable that they caused Anthony to quit.

145. Defendant constructively discharged Anthony because of her disability.

146. Alternative, Defendant constructively discharged Anthony because of a perceived disability.

147. Defendant constructively discharged Anthony in retaliation for utilizing FMLA leave.

148. Defendant constructively discharged Anthony's employment in retaliation for her raising protected complaints.

149. As a result of Defendant's constructive discharge of Anthony, Anthony suffered damages including compensatory damages and emotional distress.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*

150. Anthony restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. Anthony suffers from anxiety and depression.

152. Anthony's anxiety and depressions substantially impaired one or more of her major life activities including working.

153. Anthony has a record establishing a physical impairment.

154. As a result of suffering from anxiety and depression, Anthony is disabled.

155. In the alternative, PNC Bank perceived Anthony as being disabled.

156. Anthony's condition constituted a physical impairment.

157. Alternatively, PNC Bank perceived Anthony's condition to be a physical impairment.

158. PNC Bank treated Anthony differently than other similarly-situated employees based on her disabling condition.

159. Alternatively, Defendant treated Anthony differently than other similarly-situated employees based on her perceived disabling condition.

160. Defendant constructively discharged Anthony's employment on or about November 25, 2019.

161. Defendant constructively discharged Anthony's employment based on her disability.

162. Alternatively, Defendant terminated Anthony's employment based on her perceived disability.

163. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it constructively discharged Anthony based on her disability.

164. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Anthony based on her perceived disability.

165. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* discriminating against Anthony based on her disabling condition.

166. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Anthony based on her perceived disabling condition.

167. Anthony suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

14

168. As a direct and proximate result of Defendant's conduct, Anthony suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

169. Anthony restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Anthony suffers from anxiety and depression.

171. Anthony's anxiety and depressions substantially impaired one or more of her major life activities including working.

172. Anthony has a record establishing a physical impairment.

173. As a result of suffering from anxiety and depression, Anthony is disabled.

174. In the alternative, PNC Bank perceived Anthony as being disabled.

175. Anthony's condition constituted a physical impairment.

176. Alternatively, PNC Bank perceived Anthony's condition to be a physical impairment.

177. PNC Bank treated Anthony differently than other similarly-situated employees based on her disabling condition.

178. Alternatively, Defendant treated Anthony differently than other similarly-situated employees based on her perceived disabling condition.

179. Defendant constructively discharged Anthony's employment on or about November 25, 2019.

180. Defendant constructively discharged Anthony's employment based on her disability.

181. Alternatively, Defendant terminated Anthony's employment based on her perceived disability.

182. Defendant violated R.C. § 4112.01 *et seq.* when it constructively discharged Anthony based on her disability.

183. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* when it discharged Anthony based on her perceived disability.

184. Defendant violated R.C. § 4112.01 *et seq.* discriminating against Anthony based on her disabling condition.

185. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Anthony based on her perceived disabling condition.

186. Anthony suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

187. As a direct and proximate result of Defendant's conduct, Anthony suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III:  RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*

188. Anthony restates each and every prior paragraph of this complaint, as if it were fully restated herein.

189. As a result of the Defendant's discriminatory conduct described above, Anthony complained about the disability discrimination she was experiencing.

190. Subsequent to Anthony's reporting of disability discrimination, Anthony suffered intensified hostility and discrimination.

191. Subsequent to Anthony's reporting of disability discrimination, Defendant did not conduct an investigation into her complaints.

192. Subsequent to Anthony's reporting of disability discrimination, Defendant did not take corrective action regarding her complaints.

193. Subsequent to Anthony's reporting of disability discrimination, Defendant ratified the discrimination that she suffered.

194. Subsequent to Anthony's reporting of disability discrimination, Defendant did not provide Anthony additional training.

195. Subsequent to Anthony's reporting of disability discrimination, Defendant did not pay Anthony for a month's work of work that she performed for Defendant.

196. Subsequent to Anthony's reporting of disability discrimination, Defendant constructively discharged Anthony's employment.

197. Defendant's actions were retaliatory in nature based on Anthony's opposition to the unlawful discriminatory conduct.

198. Pursuant to 42 U.S.C. 126 § 12101, *et seq*., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory conduct.

199. Anthony suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

200. As a direct and proximate result of Defendant's retaliatory discrimination against and constructive discharge of Anthony's employment, she suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq*.**

201. Anthony restates each and every prior paragraph of this complaint, as if it were fully restated herein.

202. As a result of the Defendant's discriminatory conduct described above, Anthony complained about the disability discrimination she was experiencing.

203. Subsequent to Anthony's reporting of disability discrimination, Anthony suffered intensified hostility and discrimination.

204. Subsequent to Anthony's reporting of disability discrimination, Defendant did not conduct an investigation into her complaints.

205. Subsequent to Anthony's reporting of disability discrimination, Defendant did not take corrective action regarding her complaints.

206. Subsequent to Anthony's reporting of disability discrimination, Defendant ratified the discrimination that she suffered.

207. Subsequent to Anthony's reporting of disability discrimination, Defendant did not provide Anthony additional training.

208. Subsequent to Anthony's reporting of disability discrimination, Defendant did not pay Anthony for a month's work of work that she performed for Defendant.

209. Subsequent to Anthony's reporting of disability discrimination, Defendant constructively discharged Anthony's employment.

210. Defendant's actions were retaliatory in nature based on Anthony's opposition to the unlawful discriminatory conduct.

211. Pursuant to R.C. § 4112.01, *et seq*., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory conduct.

212. Anthony suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

213. As a direct and proximate result of Defendant's retaliatory discrimination against and constructive discharge of Anthony's employment, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

214. Anthony restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

215. PNC Bank is a covered employer pursuant to the FMLA.

216. During her employment, Anthony qualified to utilize FMLA leave.

217. During her employment, Anthony utilized FMLA leave.

218. When Anthony utilized FMLA leave, she was entitled to utilize FMLA leave due to her own serious medical condition.

219. After Anthony utilized her qualified FMLA leave, Defendant retaliated against her.

220. Defendant retaliated against Anthony by marking Anthony as absent even though she was performing work for the company.

221. Defendant retaliated against Anthony by not conducting investigations into protected complaints that she raised.

222. Defendant retaliated against Anthony by subjecting Anthony to increased hostility and discrimination.

223. Defendant retaliated against Anthony by not paying Anthony for a month's worth of work for the company.

224. Defendant retaliated against Anthony by noy providing Anthony additional training.

225. Defendant retaliated against Anthony by constructively discharging her employment.

226. Defendant willfully retaliated against Anthony in violation of U.S.C. § 2615(a).

227. As a direct and proximate result of Defendant's wrongful conduct, Anthony is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Anthony demands from Defendant the following:

(a) Issue an order requiring PNC Bank to restore Anthony to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Anthony for compensatory damages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Anthony's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
         daniel.dubow@spitzlawfirm.com


*Attorneys For Plaintiff*


## JURY DEMAND

Plaintiff Regina Anthony demands a trial by jury by the maximum number of jurors permitted.


/s/ *Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**